Ann K. Tria (Bar No. 259138)
atria@mcbreensenior.com
MCBREEN & SENIOR
1901 Avenue of the Stars
Suite 450
Los Angeles, California 90067
Phone: (310) 552-5300
Fax: (310) 552-1205

Attorneys for Plaintiff
DAVID J. DIMARIA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID J. DIMARIA, an individual, | **Case No. 2:23-cv-05249** |
| | **COMPLAINT FOR:** |
| Plaintiff, | **(1) CONSUMER LEGAL** |
| | **REMEDIES ACT** |
| v. | **(Cal. Civil Code §1750 et seq.)** |
| | **(2) UNFAIR COMPETITION** |
| ARCIS GOLF LLC; CF VALENCIA | **(Cal. Business & Professions Code** |
| ARCIS LLC; CLP VALENCIA | **§17200)** |
| GOLF, LLC; PCMV, LLC; and DOES | **(3) FALSE ADVERTISING** |
| 1 through 25, | **(Cal. Business & Professions Code** |
| | **§17500)** |
| Defendants. | **(4) FRAUD** |
| | **(5) CONVERSION** |
| | **(6) UNJUST ENRICHMENT** |
| | **(7) BREACH OF THE COVENANT** |
| | **OF GOOD FAITH AND FAIR** |
| | **DEALING** |
| | |
| | **DEMAND FOR JURY TRIAL** |

PLAINTIFF David J. DiMaria, alleges as follows:

## JURISDICTION

1.     This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. §1332(a).  No Defendant is a citizen of the same state as Plaintiff and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## VENUE

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

3.     Plaintiff David J. DiMaria is a citizen of the United States and of California.

4.     Defendant Arcis Golf LLC is a limited liability company formed in the state of Delaware with its principal place of business located in Dallas, Texas.

5.     Defendant CF Valencia Arcis LLC (hereinafter "Arcis Valencia" or "Defendants" is a limited liability company formed in the state of Delaware with its principal place of business located in Dallas, Texas.

6.     Upon information and belief, at all times relevant hereto, Defendant CLP Valencia Golf, LLC (hereinafter "CLP" or "Defendants") was a limited

liability company formed in the state of Delaware with its principal place of business in Orlando, Florida.

7.     Upon information and belief, at all times relevant hereto, Defendant PCMV, LLC (hereinafter "PCMV" or "Defendants") was a limited liability company formed in the state of Florida with its principal place of business in Manassas, Virginia.

8.     Upon information and belief, Defendants were and are the owners and operators of Valencia Country Club (hereinafter "Club"), located in Valencia, California.

## INTRODUCTION

9.     This case involves Defendants' sale of a golf club membership to Plaintiff under fraudulent conditions, pursuant to which Plaintiff relied in purchasing a $70,000 membership with Defendants, which Defendants advised would be fully refundable upon Plaintiff's cancellation of his membership with the Club.  Defendants thereafter failed to abide by the terms of membership and cancellation thereof that were provided to Plaintiff that induced him to purchase the membership.

## FACTUAL BACKGROUND

10.     The Defendants offered and Defendants Arcis Golf and Arcis Valencia continue to offer, country club memberships at Valencia Country Club (hereinafter "Club") for sale to the general public.

11.     To obtain membership at the Club, applicants must pay a membership and/or initiation fee (hereinafter "Membership Fee") for the particular membership and must complete and submit a membership agreement and/or application (hereinafter "Membership Application").

12.     Through its promotional materials and through verbal statements by its representatives, Defendants falsely advertised the ease and flexibility of its memberships, particularly as it related to both the transfer of a membership, and to the refund of any Membership Fee.

13.     Plaintiff contacted Defendants on or about May 1, 2004 to inquire about membership at the Club.  Plaintiff was connected to Mark Coulter, the Membership Sales Director at the time.  Shortly thereafter, Plaintiff met with Mr. Coulter to play a round of golf and learn more about Club membership.  Mr. Coulter then referred Plaintiff to Dave Williams, to handle the application process.

14.     On or about May 12, 2004, Plaintiff met with Mr. Williams to discuss applying for Club membership.  Mr. Williams explained to Plaintiff that the Club's membership contract was superior to traditional private club contracts

because of the lower risk involved.  He explained that traditional private clubs offer equity memberships that are subject to the fluctuations of the market, and when sold, carry transfer fees of 25-40% on the sale price.  Mr. Williams advised Plaintiff that in contrast with these traditional club membership, when you redeem your refundable membership with the Club, you receive all your money back.

15.    Mr. Williams further advised that there were at that time 385 total Club members and that the maximum allowed would be 435 total members.  Until that membership level was reached, if a member wanted to redeem their membership, they could, but, two "direct treasury" memberships would be sold by the Club in between each existing member redeeming their memberships. Once the total number of memberships reached 435, there would be no more "direct treasury" memberships for sale.  At that point, membership redemption would result in a full and immediate refund of the $70,000 purchase price, whereinafter the Club would sell a replacement membership to bring the total back to 435.

16.    Following this discussion, Plaintiff was presented with a Membership Application on or about May 12, 2004.  While completing the Membership Application, Plaintiff noticed that it stated, *inter alia*, that Plaintiff had received, read, and understood the Club's bylaws.  Plaintiff, however, had not

been presented with the Club's bylaws and requested to see them.  Mr. Williams advised Plaintiff that "the bylaws will be in your new member binder" after Plaintiff's Membership Application is submitted with his Membership Fee, and after he was approved for membership.  Plaintiff then signed the Membership Application on May 12, 2004 and gave it to Mr. Williams.

17.    The standardized Membership Application form was drafted and imposed by Defendants, who had superior bargaining strength. The application provided Plaintiff only the opportunity to adhere to the application language or reject it.  Plaintiff was not aware of the meaning of any clauses included in the bylaws because the bylaws were not provided to him prior to purchase of the membership, despite his asking to review them beforehand.

18.    Plaintiff was unable to negotiate, modify or seek a waiver of any terms of the Membership Application, and specifically was unable to negotiate, modify, or seek a waiver of any terms contained in the Club bylaws, because they were not presented to him until after he purchased his membership.

19.    The Membership Application failed to disclose the difficulty of membership resignation and of the corresponding difficulty in obtaining a refund of a Membership Fee.

20.     Before submitting the application, Mr. Williams advised Plaintiff the Club had arranged financing for new members who needed to borrow money to pay the initiation fee, with Hillcrest Bank.  Mr. Williams provided information regarding financing along with the membership application.

21.     On or about June 7, 2004, Plaintiff borrowed $52,500 at 6.5% interest on June 7, 2004 from Hillcrest Bank of Overland Park, Kansas.  Lance Tomlin at Open Course Financial Services, of Reston, Virginia shepherded the loan application.  Plaintiff paid the loan off in about a year.

22.     After the application and membership payment were accepted, on or about June 29, 2004, Marni Hebner, Member Relations at Valencia Country Club, sent Plaintiff a letter in a Valencia Country Club folder with four enclosures (Plaintiff's membership application, Ambassador Awards Program Card, gift card, and spiral bound 43-page document, including correspondence and general information (9 pgs.) and bylaws (34 pgs.).

23.     Years after Plaintiff purchased what was advertised and sold to him as a refundable membership with the Club, the Club began selling non-refundable memberships at one-third to one-half of what they had previously been sold for.  This undertaking is a possibility noted in the bylaws, and upon doing so, Defendants effectively destroyed the refundable membership market.

24.     Plaintiff thereafter learned of numerous members who were on a waiting list to redeem their memberships for a refund.  The Club advised those on the waiting list that their redemption required/necessitated the selling of replacement memberships to new members.  That is not the arrangement that was presented to Plaintiff by Defendants when Plaintiff purchased his membership.  Rather, Defendants advised Plaintiff at the time he purchased the membership that it would be redeemed for $70,000 upon termination of his membership with the Club, with at most a requirement that two direct treasury memberships be sold prior to redemption of his Membership Fee.  That was the only membership option at the Club pursuant to the information provided by Defendants to Plaintiff when soliciting his membership and taking his application fee.  Plaintiff further was advised that when the Club reached a total membership of 435, any relationship between redemption and a new treasury membership being sold by the Club to a new member, became moot.  Redemptions would then be immediate.

25.     Plaintiff joined the Club based on the representations made by Defendants.  After his application was made, his entry fee was paid, and his membership approved, he was presented with entirely different redemption terms, which he discovered when he provided notice of his resignation and attempted to redeem his Membership Fee.

26.     On April 22, 2022, Plaintiff sent Defendants a certified letter advising that he wished to resign/redeem his membership, effective June 1, 2022.  The letter was delivered to Defendants on April 25, 2022.

27.     On June 11, 2022, having received no response from Defendants, Plaintiff sent an email to Andre Jackson, Senior General Manager of the Club, again advising Defendants that he wished to resign/redeem his membership effective June 1, 2022 and that he expected to receive a refund of his $70,000 membership fee, as he was advised when joining the Club.

28.     On June 13, 2022, Plaintiff was contacted by Mr. Jackson to discuss his membership redemption.  Mr. Jackson advised Plaintiff that due to a 2019 lawsuit, the process for redeeming memberships had changed, and in order to redeem his membership, he would need to be put on a refund waitlist that already included many members waiting to redeem memberships.  Plaintiff was further advised that in order to be placed on the waitlist, he would need to pay 12 months of active full dues, at which point Plaintiff's membership would be resigned and he would pay an administrative fee of $82 per month for a period of 36 months.  Plaintiff would then remain on the refund list until his name came up.  Plaintiff was given an alternative option of resigning his membership effective immediately, forfeiting his $70,000 initiation fee, and

paying no additional fees going forward.  Plaintiff declined to respond to the choices provided.

29.    Upon information and belief, Defendants reference to the 2019 lawsuit refers to the class action lawsuit brought against Defendants by members of the Club, Faris v. CLP Valencia Golf, LLC, et al., Los Angeles Superior Court Case No. BC972560.  Plaintiff opted out of participating in the class action lawsuit, per notice dated March 7, 2018.

## CLAIM ONE: CONSUMER LEGAL REMEDIES ACT
### (Cal. Civil Code §1750 et seq. Against all Defendants)

30.    Plaintiff incorporates by reference paragraphs 1-29 above as though fully set forth herein.

31.    Plaintiff is a "consumer" within the meaning of the Consumer Legal Remedies Act.  The sale of a Club membership by Defendants to Plaintiff falls within the transactions of "goods" or "services" between merchants and consumers, and Plaintiff has suffered damage as a result of the methods, acts, or practices of Defendants.

32.    In violation of Section 1770(a)(5), Defendants represented to Plaintiff that certain Club memberships had characteristics or benefits that they actually did not, and do not have.  Defendants made a material misrepresentation consisting of a failure to disclose a particular fact.  Defendants' conduct was

deceptive, and Defendants' deception, misrepresentation, and concealment of material information caused Plaintiff harm.

33.     In violation of Section 1770(a)(9), Defendants advertised to Plaintiff memberships with the intent not to sell them as advertised.  Defendants' misleading advertising was relied upon by Plaintiff, and caused Plaintiff to make a Club membership purchase that, absent that misleading advertising, he would not have made.

34.     In violation of Section 1770(a)(14), Defendants represented that the purchase of a Club membership conferred or involved rights, remedies, or obligations that it did not and does not have, specifically that the Membership Fee would be fully refundable to Plaintiff upon termination of his membership.

35.     In violation of Section 1770(a)(17), Defendants represented to Plaintiff that the receipt of a rebate or other economic benefit - the refund of his Membership Fee - with the earning of that economic benefit contingent on an event to occur subsequent to the consummation of the transaction wherein Plaintiff purchased a Club membership.

36.     In violation of Section 1770(a)(18), Defendants misrepresented the authority of a salesperson, representative or other agent to negotiate the final terms of the transaction involving Plaintiff's membership.

37.     Plaintiff relied to his detriment on the misrepresentations provided by Defendants, in that he purchased a Club membership and paid a $70,000 Membership Fee that he would not have otherwise purchased had Defendants not misrepresented material facts related to the transaction.

38.     Plaintiff sent Defendants written notice demanding that the Defendants remedy the violations listed above and provide Plaintiff with a full refund of his $70,000 membership fee, as represented to him when purchasing the membership.  As of the filing of this Complaint, Defendants have neither made nor offered to make any proper correction of the conduct complained of.

39.     Plaintiff sent Defendants written notice, by certified mail, return receipt requested (Attached as Exhibit A), notifying Defendants of the violations and demanding that Defendants remedy the violations listed above within 30 days from their receipt of the letter.  The notice was sent to Defendants at the address then listed as their principal address with the California Secretary of State.  The letter was returned as undeliverable to that address.

40.     Plaintiff thereafter sent a copy of the letter via FedEx to Defendants at the address listed with the Secretary of State, with an additional copy to the Club Manager at the Club's California address.  Proof of Delivery of the letter is attached hereto as Exhibit B.

41.     At the time of filing this complaint, more than thirty days has passed since Defendants' receipt of Plaintiff's letter and demand, and Defendants have declined to make any proper correction of the conduct complained of.

42.     Plaintiff is a senior citizen as defined in Civil Code sections 1780 and 1761.

43.     Plaintiff has suffered substantial physical, emotional, or economic damage resulting from the Defendants' conduct.

44.     Defendants knew or should have known that their conduct was directed to one or more senior citizens, disabled persons, or veterans.

45.     Defendants' conduct caused Plaintiff, a senior citizen, to suffer loss or encumbrance of a primary source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; and/or or substantial loss of assets essential to his health or welfare.

46.     Plaintiff seeks damages, including, but not limited to:

    a.  Damages in the amount of $70,000 for the Membership Fee paid to Defendants;

    b.  Damages in the amount of not less than $10,000 for Club dues charged to Plaintiff after Plaintiff provided notice of resignation of his membership;

    c.  Plaintiff's attorney's fees in an amount not less than $9,750;

d.  Punitive damages in the amount of $1,000,000;

e.  Statutory damages in the amount of $5,000 pursuant to Cal.
    Civil Code § 1780(b)(1);

f.  Treble damages under Cal. Civil Code § 3345;

g.  In all other amounts according to proof.

## CLAIM TWO: UNFAIR COMPETITON
### (Cal. Business & Professions Code §17200 et seq. Against all Defendants)

47.  Plaintiff incorporates by reference paragraphs 1-44 above as though fully set forth herein.

48.  California Business and Professions Code §17200 et seq. prohibits acts of unfair competition, which shall include any "unlawful and unfair business practices," and Defendants' ownership and operation of the Club is a business within the meaning of that Code.

49.  Defendants' conduct constitutes part of their overall scheme to mislead and defraud consumers.  Defendants' actions are not only likely to deceive the public, they have deceived the public for years.  As more fully described above, Defendants' acts and practices constitute unfair business acts or practices within the meaning of Business and Professions Code §17200, et seq.

**14**
**COMPLAINT**

in that their conduct has been fraudulent, deceptive, untrue, misleading, unfair and wrongful in violation of the Consumer Legal Remedies Act -- Cal. Civil Code §1750 et seq.

50.    Defendants' conduct includes, among other things, making a series of false statements and advertisements regarding the ease and flexibility of membership resignation and the refund of Membership Fees, indefinite delay in the reissuance of resigned members' memberships, indefinite delay in the refund of Membership Fees for resigned members, indefinite delay in the completion of membership resignation for members who wish to resign from the Club, failure to give notice of the indefinite delay in the reissuance of resigned members' membership within the Membership Application or Bylaws, failure to give notice of indefinite delay in the refund of Membership Fees for resigned members within the Membership Application or Bylaws, failure to give notice of the indefinite delay in completion of membership resignation for members who wish to resign from the Club in the Membership Application or Bylaws, failure to give notice of the indefinite delay in the reissuance of resigned members' membership in the Membership Application or Bylaws.  On information and belief, Defendant's unfair conduct is ongoing and continues to this date.

51.     As a direct and proximate result of Defendants' aforementioned acts, Defendants have prospered and benefitted from the indefinite withholding of Membership Fees from Plaintiff and other resigned members and should be enjoined from continuing such practice under California Business & Professions Code §17200.

52.     Plaintiff seeks restitution in the amount paid for his initial Membership Fee and any dues paid after giving notice of resignation to the Club.

53.     Plaintiff also seeks injunctive relief requiring that Defendants cease making the misrepresentations outlined above.

54.     Plaintiff and other consumers have no adequate remedy at law to protect themselves from Defendants' deceptive, pervasive, illegal, and unfair business practices.  A remedy at law is inadequate to compensate for injuries inflicted by Defendants, in part because consumers will have to initiate litigation after a purchase of a Club membership has already occurred, thus making litigation costs prohibitive. Section 17204 provides that "any person" may sue on behalf of "itself, its members, or on behalf of the general public."

55.     Granting injunctive relief will protect Plaintiff and other consumers from Defendants' unfair business practices.  Defendants will continue to violate the law and mislead consumers unless enjoined from their unlawful, wrongful and unethical conduct.  Defendants have engaged in unfair, unlawful and fraudulent

business practices intended to deceive consumers, including Plaintiff.

Injunctive relief will bar Defendants from future violations of law.

56.    Although it is too soon to predict the exact scope and details of

injunctive and other equitable relief, Plaintiff anticipates requesting the

following orders from the Court:

> (a) That Defendants cease making the misrepresentations stated
> above;
>
> (b) That Defendants be ordered to reimburse Plaintiff not less than
> $80,000 for the amount paid for his Membership Fees and dues paid
> after asking for return of his Membership Fees; and
>
> (c) Whatever additional orders appear appropriate after discovery and
> additional investigation.

## CLAIM THREE: FALSE ADVERTISING
**(Cal. Business and Professions Code §17500 et seq. Against all Defendants)**

57.    Plaintiff incorporates by reference paragraphs 1-54 above as though fully

set forth herein.

58.    California Business and Professions Code §17500 et seq. prohibits

untrue or misleading advertising that is known, or which reasonably should be

known, to be untrue or misleading.  Defendants' ownership and operation of

the Club is a business within the meaning of that Code.

59.   California Business and Professions Code § 17500 makes it unlawful, in pertinent part, "for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of . . . personal property or to perform services . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate . . . before the public in this state, . . . in any newspaper or other publication . . . or in any other manner or means whatever . . . any statement, concerning that . . . personal property or those services . . . which is untrue or misleading, and which is known, or which exercise of reasonable care should be known, to be untrue or misleading …."

60.   As detailed above, Defendants made statements in their advertising, including statements from their sales managers and/or other agents, that were and are untrue or misleading.  Those false or misleading statements were likely to deceive Plaintiff, and were, and are, likely to deceive other purchasers of Club memberships.

61.   Section 17500 extends to oral statements, and statements made by Dave Williams and other officials at the Club, stating the ease of resigning from the Club, of reselling a membership, and of being issued a refund of Membership Fees, all statements which Plaintiff relied upon, were untrue or misleading, and contrary to the terms of its undisclosed and suppressed by-laws.

62.    Defendants knew, or by the exercise of reasonable care should have known, that those statements were untrue or misleading.  Dave Williams, in his capacity as a membership sales agent at the Club, and Mark Coulter, in his capacity as membership sales director at the Club, knew, or should have known, that the Club had not been honoring the resale of memberships through the Club's Transfer System for years prior to Plaintiff's joining the Club.

63.    Plaintiff seeks restitution in the amount paid for his Membership Fee and any dues paid after giving his official notice of resignation from the Club, on or about April 22, 2022, with an effective date on or about June 1, 2022.

64.    Plaintiff also seeks injunctive relief requiring that Defendants cease the false advertising outlined above, as Defendants' objectionable conduct is likely to reoccur.

## CLAIM FOUR: FRAUD
### (Against all Defendants)

65.    Plaintiff incorporates by reference paragraphs 1-62 above as though fully set forth herein.

66.    Through its promotional materials and through verbal statements by its representatives, Defendants, and/or their predecessors in interest, authorized Club officials, including Dave Williams, to falsely advertise the ease and flexibility of its memberships to Plaintiff, particularly as it related to both the transfer of a membership, and to the refund of any Membership Fee.

67.     Defendants made false representations of material facts with regard to the ease and flexibility for a resigning member to resell his membership and to obtain a refund of Membership Fees.  Prior to purchasing his membership, Plaintiff was advised on the ease and flexibility of membership at the Club by Dave Williams, Membership Sales, acting as Defendant's agent.  Mr. Williams emphasized the ease of membership transfer and redemption compared to other Clubs throughout discussions with Plaintiff prior to Plaintiff's purchase of a membership.

68.     Defendants fraudulently advised Plaintiff, particularly through the statements of Mr. Williams, that the wait time for obtaining a Membership Fee refund following termination of Club membership would be significantly shorter than what they knew to be the current wait time.  Statements made to Plaintiff by Defendants, particularly those by Mr. Williams, clearly stated that the Club was obligated to alternate sales to new applicants - for every two new direct treasury membership sales by the Club to an applicant on the Applicant List, a sale was to be made to an applicant from the Member List, the waiting list of Members wishing to sell their memberships. Thus, for every two direct treasury memberships sold, one membership was to be resold via the resignation list.  Mr. Williams failed to advise Plaintiff that Defendant's by-laws permitted the sale of other types of memberships that could be used to

undercut and effectively eliminate the redemption of Plaintiff's membership fee. This is plainly set forth in Defendants bylaws which Mr. Williams refused to disclose and in fact suppressed from Plaintiff, despite his request for same, until after taking his application and membership fee and securing financing for Plaintiff to pay the fee. Plaintiff had no reason to know that the bylaws would state terms different than those expressed by Defendants and Mr. Williams when soliciting his membership application and fees.

69. Defendants further fraudulently advised Plaintiff that once the Club reached a total of 435 members, there would be no wait time, and refund of the Membership Fee would be made immediately upon resignation.

70. Defendants failed to disclose to Plaintiff at the time of Plaintiff's purchase of his membership and subsequent to that purchase, the difficulty of membership resignation and of the corresponding difficulty in obtaining a refund of a Membership Fee.

71. Defendants, through statements by Mr. Williams and/or other representatives of Defendants, both at the time of Plaintiff's purchase of his membership and subsequent to that purchase, conveyed that resignation, and the related transfer of a membership to an applicant wishing to purchase a membership, was a simple process taking a matter of months, if not immediate. Instead, Plaintiff was advised upon his request to terminate his membership

and redeem his Membership Fee, that he would have to be placed indefinitely on a long waitlist with no indication of how long redemption may take.

72.     Defendants made these false representations to Plaintiff with the intent that he rely on those statements in making his decision to purchase a membership with the Club.

73.     Plaintiff relied, to his detriment, on Defendants' statements suggesting the ease and simplicity of membership transfer.  In fact, the ability to transfer the membership with a great degree of ease was the most important factor in Plaintiff's valuing the purchase of his Club membership, and was a major point of emphasis in Plaintiff's discussions with Defendants prior to purchasing the membership.

74.     The representations made by Defendants and/or their agents or representatives were false, in that the truth is, and was, far different from representations made.

75.     Upon notifying Defendants that he wished to resign his membership in the Club and obtain a refund of his Membership Fee, Plaintiff was advised that he would need to continue paying membership dues for one year before being placed on a waitlist for members requesting refunds of their Membership Fees, and would need to continue paying administrative fees for 36 months

thereafter.  Alternatively, he was advised that he could forfeit his Membership Fee refund and not pay any further membership dues.

76.     When Defendants made the false representations that the Membership Fee would be fully and easily refundable, they knew them to be false, or had no reasonable grounds for believing those representations to be true.

77.     Defendants concealed or suppressed material facts with regard to the ability to resign from and resell Club memberships, and Defendants were bound to disclose those material facts.

78.     Instead of disclosing them, Defendants concealed or suppressed those facts with the intent to defraud and induce Plaintiff to act - specifically to purchase a Club membership with a $70,000 Membership Fee.

79.     On information and belief, Defendants knew that at the time Plaintiff purchased his membership, there already were several members on a redemption waitlist who were waiting years for their turn to receive a refund.

80.     Defendants were bound to disclose the true facts with regard to resignation from the Club, but instead offered information likely to mislead Plaintiff, and failed to communicate the true facts to Plaintiff.

81.     Defendants made a promise to Plaintiff about a material matter with no intention of performing that promise.  Defendants' promise without any intention of performance was made with the intent to defraud and to induce

Plaintiff to rely upon that information, and to induce Plaintiff to pay a $70,000 Membership Fee to join the Club.  In justifiable reliance upon Defendants' conduct, Plaintiff was induced to act by paying that Membership Fee.  As a result of Plaintiff's reliance upon Defendants' false information, Plaintiff has been damaged by having his Membership Fee withheld, along with consequential damages resulting from Defendants' retention of his Membership Fee.

82.     At the time of his payment of the Membership Fee, Plaintiff was unaware of the facts concealed and suppressed by Defendants and was not made aware of the true facts until Plaintiff attempted to resign his membership and obtain the promised refund of his Membership Fee, on or about June 2022. Plaintiff would not have joined the Club and paid the $70,000 Membership Fee had he known the true nature of the requirements for resignation and redemption.

83.     Plaintiff seeks to recover damages, including, but not limited to:

        a.  Damages in the amount of $70,000 for the Membership Fee Plaintiff paid to Defendants;

        b.  Damages in the amount of not less than $10,000 for Club dues charged to Plaintiff after Plaintiff provided notice of resignation of his membership;

c.  Punitive damages in the amount of $1,000,000;

d.  Treble damages under Cal. Civil Code § 3345; and

e.  In all other amounts according to proof.

## CLAIM FIVE: CONVERSION
### (Against all Defendants)

84.   Plaintiff incorporates by reference paragraphs 1-81 above as though fully set forth herein.

85.   Plaintiff claims that Defendants have wrongfully exercised control over Plaintiffs personal property, namely the $70,000 he paid as a Membership Fee in 2004 which he anticipated having returned to him shortly after his resignation effective on June 1, 2022.  Plaintiff had, and has, a right to possess his Membership Fee, but Defendants have substantially interfered with Plaintiffs property by preventing Plaintiff from having access to the Membership Fee due him.

86.   Plaintiff has never consented to Defendants' preventing him from having access to his Membership Fee since the time of his resignation notice.  Plaintiff has been harmed in that he has been denied those substantial funds, thus preventing him from using the funds, or investing them, and Defendants'

conduct was and is a substantial factor, if not the only factor, in causing that harm to Plaintiff.

87.     Defendants acted with oppression, fraud, or malice in their dealings with Plaintiff, as detailed above.

88.     Plaintiff seeks to recover damages, including, but not limited to:

        a.  Damages in the amount of $70,000 for the Membership Fee Defendants have wrongfully withheld;

        b.  Damages in the amount of not less than $10,000 for Club dues charged to Plaintiff after Plaintiff provided notice of resignation of his membership;

        c.  Punitive damages in the amount of $1,000,000;

        d.  Treble damages under Cal. Civil Code § 3345; and

        e.  In all other amounts according to proof.

## CLAIM SIX: UNJUST ENRICHMENT
### (Against all Defendants)

89.     Plaintiff incorporates by reference paragraphs 1-86 above as though fully set forth herein.

90.     As a result of Defendants' conduct detailed above, Defendants have been unjustly enriched by the amount of refund Defendants have refused to pay Plaintiff, an amount which has impoverished Plaintiff by that same amount.

91.    There is no justification which would, as a matter of equity, permit Defendants to retain the benefit and value of amounts rightfully due to Plaintiff.

92.    Plaintiff has no adequate remedy at law; therefore, under the Court's equitable powers, the Court should order Defendants to pay Plaintiff the value of the refund, $70,000, plus the amount of any dues charged to Plaintiff after giving notice of resignation of his membership, or such amount as may be proven at trial.

93.    Plaintiff additionally seeks punitive damages in the amount of $1,000,000 because Defendants acted with oppression, fraud, or malice in their dealings with Plaintiff, as detailed above.

94.    Plaintiff additionally seeks treble damages under Cal. Civil Code § 3345.

**<u>CLAIM SEVEN:</u>**
**<u>BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING</u>**
**(Against all Defendants)**

95.    Plaintiff incorporates by reference paragraphs 1-92 above as though fully set forth herein.

96.    Every agreement carries with it as a matter of law a covenant of good faith and fair dealing, including the agreement between Plaintiff and the Club.

97.    The actions of Defendants in failing to issue a refund to Plaintiff pursuant to the promises made to Plaintiff at the time he purchased his membership and subsequent to that purchase, and falsely advertising the ease and flexibility of its memberships, particularly as it related to both the transfer of a membership as described above and the ability to redeem the membership for a full refund of the Membership Fee, violated the covenant of good faith and fair dealing by unfairly depriving Plaintiff of a central benefit of the agreement between Plaintiff and the Club and made it impossible for Plaintiff to recover his Membership Fee as provided by their agreement.

98.    As a direct and proximate result of the breach of covenant of good faith and fair dealing by Defendants, Plaintiff has been damaged in the amount of $70,000.00 plus the amount of any dues charged to Plaintiff after giving notice of resignation of his membership, or such other amount as may be proven at trial.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff David J. DiMaria, demands a jury trial on all the issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants as follows:

1. Damages according to proof, including return of Plaintiff's $70,000 Membership Fee plus not less than $10,000 in membership dues charged after Plaintiff gave notice of resignation of his membership;

2. Statutory damages according to proof;

3. Punitive damages according to proof;

4. Treble damages to the extent allowed under Cal. Civil Code § 3345;

5. Prejudgment interest as allowed by law;

6. Plaintiff's attorney's fees and the costs of suit incurred herein; and

7. Such other and further relief as this Court may deem just and proper.

DATED: June 30, 2023          MCBREEN & SENIOR

By:   /s/ Ann K. Tria
      ANN K. TRIA
      Attorneys for Plaintiff
      DAVID J. DIMARIA