Ann K. Tria (Bar No. 259138)
atria@mcbreensenior.com
David A. Senior (Bar No. 108579)
dsenior@mcbreensenior.com
MCBREEN & SENIOR
1901 Avenue of the Stars
Suite 450
Los Angeles, California 90067
Phone: (310) 552-5300
Fax: (310) 552-1205

Attorneys for Plaintiff
DAVID J. DIMARIA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID J. DIMARIA, an individual, )<br><br>Plaintiff, )<br><br>v. )<br><br>ARCIS GOLF LLC; CF VALENCIA )<br>ARCIS LLC; CLP VALENCIA )<br>GOLF, LLC, )<br><br>Defendants. )<br>_____ | **Case No. 2:23-cv-05249**<br>**FIRST AMENDED COMPLAINT**<br>**FOR:**<br>**(1) BREACH OF CONTRACT**<br>**(2) CONSUMER LEGAL**<br>**REMEDIES ACT**<br>**(Cal. Civil Code §1750 et seq.)**<br>**(3) FRAUD**<br>**(4) NEGLIGENT**<br>**MISREPRESENTATION**<br><br>**DEMAND FOR JURY TRIAL** |

PLAINTIFF David J. DiMaria, alleges as follows:

## JURISDICTION

1.      This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. §1332(a).  No Defendant is a citizen of the same state as Plaintiff and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## VENUE

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

3.      Plaintiff David J. DiMaria is a citizen of the United States and of California.

4.      Defendant Arcis Golf LLC (hereinafter "Arcis" or "the Arcis Defendants" or "Defendants") is a limited liability company formed in the state of Delaware with its principal place of business located in Dallas, Texas.

5.      Defendant CF Valencia Arcis LLC (hereinafter "Arcis Valencia" or "the Arcis Defendants" or "Defendants") is a limited liability company formed in the state of Delaware with its principal place of business located in Dallas, Texas.

6.      Upon information and belief, at all times relevant hereto, Defendant CLP Valencia Golf, LLC (hereinafter "CLP" or "Defendants") was a limited

liability company formed in the state of Delaware with its principal place of business in Orlando, Florida.

7.     Upon information and belief, Defendants were and are the owners and operators of Valencia Country Club (hereinafter "Club"), located in Valencia, California.  Upon information and belief, the Club currently is owned and operated by defendants CF Valencia Arcis LLC and Arcis Golf LLC (hereinafter "the Arcis Defendants"), who are successors to the Club's previous owners and managers, Defendant CLP Valencia Golf, LLC.

8.     Upon information and belief, the Arcis Defendants purchased the Club on or about 2014, and thereafter assumed ownership and operation of the Club, operating the Club as successors in interest and a mere continuation of the business, under the same name, as an assignee of all commitments and contractual obligations, retaining the existing membership agreements, and offering the sale of the same services as the previous owners/operators.  As such, the Arcis Defendants are liable to Plaintiff as successors in interest for any acts or omissions committed by their predecessors in interest.

9.     Upon information and belief, the Arcis Defendants expressly and/or impliedly assumed the benefits and liabilities of the Club's previous ownership, including, *inter alia*, all agreements and contracts in existence between the Club and its members at the time the Arcis Defendants purchased

**3**

**FIRST AMENDED COMPLAINT**

the Club, as well as any representations made to existing or prospective members.

10.    Upon information and belief, each of the Defendants is, and at all times relevant to this Complaint was, the agent, employer, partner, joint venture, alter ego, affiliate, and/or co-conspirator of the other Defendants and, in doing the actions alleged herein, was acting within the course and scope of those such positions at the direction of, and/or with the permission, knowledge, consent, and/or ratification of, the other Defendants.  Consequently, each Defendant is jointly and severely liable to Plaintiff for the damages sustained as a proximate result of their conduct.

## **INTRODUCTION**

11.    This case involves Defendant CLP's sale of a golf club membership to Plaintiff, under fraudulent conditions, pursuant to which Plaintiff relied in purchasing a $70,000 membership, which Defendant CLP, through its employees and agents, advised would be fully refundable upon Plaintiff's resignation of his membership.  The Arcis Defendants, CLP's successors in interest, thereafter acquired the contract between CLP and Plaintiff, and failed to abide by the terms of membership and cancellation thereof that were provided to Plaintiff that induced him to purchase the membership.

**FIRST AMENDED COMPLAINT**

## FACTUAL BACKGROUND

12.     Defendant CLP offered and the Arcis Defendants continue to offer, country club memberships at Valencia Country Club (hereinafter "Club") for sale to the public.

13.     To obtain membership at the Club, applicants must pay a membership and/or initiation fee (hereinafter "Membership Fee") for the membership and must complete and submit a membership agreement and/or application (hereinafter "Membership Application").

14.     Through its promotional materials and through verbal statements by its representatives, Defendant CLP falsely advertised its available memberships, including the procedures required and possibility of getting a refund, if any, of the Membership Fee upon member resignation from the Club.

15.     Following its purchase of the Club, the Arcis Defendants continued to take advantage of Defendant CLP's false representations to its profit and the detriment of its resigning members who purchased the fully refundable membership.

16.     Plaintiff contacted the Club on or about May 1, 2004 to inquire about obtaining a membership.  Plaintiff was connected to Mark Coulter, the Membership Sales Director at the time.  Shortly thereafter, Plaintiff met with Mr. Coulter to play a round of golf and learn more about Club

**5**

**FIRST AMENDED COMPLAINT**

membership.  Mr. Coulter then referred Plaintiff to Dave Williams to handle the application process.  Upon information and belief, Mr. Coulter and Mr. Williams were employees and agents of Defendant CLP at the time Plaintiff inquired about membership.

17.     On or about May 12, 2004, Plaintiff met with Mr. Williams to discuss applying for Club membership.  Mr. Williams advised Plaintiff that the Club's membership contract was superior to traditional private club contracts because there was no risk involved.  He explained that traditional private clubs offer equity memberships that are subject to the fluctuations of the market, and when sold, carry transfer fees of 25-40% on the sale price.  Mr. Williams advised Plaintiff that in contrast with these traditional club memberships, if Plaintiff joined this Club, he would receive all of the Membership Fee back whenever he decided to resign from his membership with the Club.

18.     Mr. Williams further advised that there were at that time 385 total Club members and that the maximum allowed would be 435 total members.  Until that membership level was reached, if a member wanted to resign their membership, they could, but two "direct treasury" memberships owned by the Club would be sold by the Club before the resigning membership would be sold, and it would continue in this 2 for 1 order until the membership reached 435 members.  Once the total number of memberships reached 435, there

**FIRST AMENDED COMPLAINT**

would be no more "direct treasury" memberships for sale.  At that point, membership redemption would result in a full and immediate refund of the $70,000 Membership Fee.

19.     Mr. Williams represented that this flexible and fully refundable membership was the only type of membership at the Club, making this Club unique.  Mr. Williams intentionally failed to advise Plaintiff that other forms of cheaper, non-refundable but more financially attractive memberships could be marketed and sold by the Club pursuant to its bylaws, which if employed by the Club, would effectively eliminate the resale market of the refundable membership.

20.     Following this discussion, Plaintiff was presented with a Membership Application on or about May 12, 2004.  While completing the Membership Application, Plaintiff noticed that it stated, *inter alia*, that Plaintiff had received, read, and understood the Club's bylaws.  Plaintiff, however, had not been presented with the Club's bylaws and requested to see them.

21.     Mr. Williams advised Plaintiff that "the bylaws will be in your new member binder" after Plaintiff's Membership Application was submitted with his Membership Fee, and after he was approved for membership.  Therefore, the bylaws were omitted by the parties as a term of Plaintiff's membership application and membership agreement.

**FIRST AMENDED COMPLAINT**

22.     Plaintiff then signed the form Membership Application on May 12, 2004 and gave it to Mr. Williams, as directed by Mr. Williams to do.

23.     Plaintiff's membership application and membership payment were then accepted by Defendant CLP.

24.     Plaintiff joined the Club based on the foregoing representations made by Defendant CLP, including: one type of Club membership; a unique membership with a fully refundable $70,000 Membership Fee; and, an immediately refundable Membership Fee upon resignation if the Club had 435 members, and if not, a 2 for 1 sale queue of treasury memberships and refundable memberships.

25.     After Plaintiff's application was made, his entry fee was paid, his membership approved, and after being a member for eighteen years and paying his monthly dues timely and in full, Plaintiff decided to resign his membership. On April 22, 2022, Plaintiff sent the Arcis Defendants a certified letter advising that he wished to resign/redeem his membership, effective June 1, 2022.  The letter was delivered to Defendants on April 25, 2022.

26.     On June 11, 2022, having received no response from Defendants, Plaintiff sent an email to Andre Jackson, Senior General Manager of the Club, again advising that he wished to resign/redeem his membership effective June

**8**

**FIRST AMENDED COMPLAINT**

1, 2022 and that he expected to receive a refund of his $70,000 Membership

Fee, as he was advised when joining the Club.

27.    Upon information and belief, Mr. Jackson is and was an agent and

employee of the Arcis Defendants at all relevant times mentioned herein.

28.    On June 13, 2022, Plaintiff was contacted by Mr. Jackson to discuss his

membership redemption.  Mr. Jackson advised Plaintiff that due to a 2019

lawsuit, the process for redeeming memberships had changed, and in order to

redeem his membership, he would need to be put on a refund waitlist that

already included many members waiting to redeem memberships.  Plaintiff

was further advised that in order to be placed on the waitlist, he would need to

pay 12 months of active full dues, at which point Plaintiff's membership would

be resigned and he would pay an administrative fee of $82 per month for a

period of 36 months.  Plaintiff would then remain on the refund list until his

name came up.  Plaintiff was given an alternative option of resigning his

membership effective immediately, forfeiting his $70,000 Membership Fee,

and paying no additional fees going forward.  Plaintiff declined to respond to

the choices provided.

29.    Upon information and belief, Mr. Jackson's reference to the 2019

lawsuit refers to the class action lawsuit brought against Defendants by

members of the Club, Faris v. CLP Valencia Golf, LLC, et al., Los Angeles

Superior Court Case No. BC972560.  Plaintiff opted out of participating in the class action lawsuit, per notice dated March 7, 2018, because he did not believe himself to be similarly situated to the class.

30.     It was not until this June 22 correspondence with Mr. Jackson that Plaintiff learned that the Arcis Defendants would not honor the terms of the agreement entered by the parties when Plaintiff signed the form membership application and paid the $70,000 Membership Fee.

31.     The Arcis Defendants have refused to refund Plaintiff's Membership Fee as agreed to by the parties upon entering the membership contract.  The Arcis Defendants presented Plaintiff with entirely different redemption terms, which he did not discover until he provided notice of his resignation and attempted to redeem his Membership Fee in 2022.

## CLAIM ONE: BREACH OF CONTRACT

32.     Plaintiff incorporates by reference each and every paragraph above as though fully set forth herein.

33.     On or about May 2004, the Club offered Plaintiff a Club membership with Defendant CLP, owner and operator of the Club, with a fully refundable Membership Fee of $70,000, if Plaintiff filled out a form membership application (wherein the parties agreed Plaintiff would not receive, review, or be subject to the refenced bylaws in the form application), and agreed to pay a

$70,000 Membership Fee.  Plaintiff thereafter would be required to pay monthly membership dues and his expenses incurred at the Club.  Plaintiff accepted this offer and received full Club golf privileges.

34.     Under the terms of the agreement, at the time Plaintiff paid his Membership Fee and joined the Club, he was entitled to a full refund of the $70,000 Membership Fee immediately upon resignation of his membership, provided that the Club maintained a total of 435 members.  If club membership fell below 435 members, Plaintiff would be entitled to a full refund after the sale of two treasury memberships.

35.     Upon information and belief, the Club reached 435 members soon after Plaintiff joined in 2004, and maintained a total membership of at least 435 members throughout Plaintiff's membership with the Club.

36.     Plaintiff paid Defendant CLP the agreed $70,000 Membership Fee and became an active member of the Club.

37.     Plaintiff remained an active member of the Club pursuant to the agreement after the Club was sold to the Arcis Defendants, at which time the Arcis Defendants expressly and/or impliedly assumed Defendant CLP's benefits and liabilities, including its obligations under Plaintiff's membership contract.

**FIRST AMENDED COMPLAINT**

38.     Upon information and belief, the Arcis Defendants purchased the Club on or about 2014, and thereafter assumed ownership and operation of the Club, operating the Club as a mere continuation of the business, under the same name, retaining and honoring the existing membership agreements, and offering the sale of the same services as the previous owners/operators.  The Arcis Defendants are successors in interest of CLP and have undertaken and assumed, expressly or impliedly, the benefits and detriments of prior ownership.  As such, the Arcis Defendants are liable to Plaintiff for any acts or omissions committed by their predecessors in interest.

39.     Upon information and belief, the Arcis Defendants are alternatively and additionally liable to Plaintiff for the acts and omissions of the Club's previous ownership in that they were a mere continuation of the business.

40.     On April 22, 2022, Plaintiff notified the Arcis Defendants that he wished to resign his membership with the Club and receive his Membership Fee refund, effective June 1, 2023.

41.     The Arcis Defendants breached their agreement with Plaintiff by refusing to provide a refund of his Membership Fee, instead offering to place him on an indefinite waitlist for which he would be required to pay an additional year of full active dues, plus 36 months of maintenance fees at a rate of $82 per month.

**FIRST AMENDED COMPLAINT**

42.     Plaintiff has been damaged in the amount of $70,000, plus any additional dues or fees that have been charged to him following his notice of resignation of membership.

## CLAIM TWO: CONSUMER LEGAL REMEDIES ACT
### (Cal. Civil Code §1750 et seq. Against all Defendants)

43.     Plaintiff incorporates by reference each and every paragraph above as though fully set forth herein.

44.     Plaintiff is a "consumer" within the meaning of the Consumer Legal Remedies Act.  The sale of a Club membership by Defendants CLP and PCMV to Plaintiff falls within the transactions of "goods" or "services" between merchants and consumers, and Plaintiff has suffered damage as a result of the methods, acts, or practices of Defendants.

45.     In violation of Section 1770(a)(5), Defendant CLP represented to Plaintiff that certain Club memberships had characteristics or benefits that they actually did not, and do not have.  Defendant CLP made a material misrepresentation consisting of a failure to disclose a particular fact.  Such conduct was deceptive, and the deception, misrepresentation, and concealment of material information caused Plaintiff harm.

46.     In violation of Section 1770(a)(9), Defendant CLP advertised to Plaintiff memberships with the intent not to perform as advertised.  This misleading

advertising was relied upon by Plaintiff and caused Plaintiff to make a Club membership purchase that, absent that misleading advertising, he would not have made.

47.     In violation of Section 1770(a)(14), Defendant CLP represented that the purchase of a Club membership conferred or involved rights, remedies, or obligations that it did not and does not have, specifically that the Membership Fee would be fully refundable to Plaintiff upon resignation of his membership.

48.     In violation of Section 1770(a)(17), Defendant CLP represented to Plaintiff that the receipt of a rebate or other economic benefit - the refund of his Membership Fee - with the earning of that economic benefit contingent on an event to occur subsequent to the consummation of the transaction wherein Plaintiff purchased a Club membership.

49.     In violation of Section 1770(a)(18), Defendant CLP misrepresented the authority of a salesperson, representative or other agent to negotiate the final terms of the transaction involving Plaintiff's membership.

50.     Plaintiff relied to his detriment on the misrepresentations provided by Defendant CLP, in that he purchased a Club membership and paid a $70,000 Membership Fee that he would not have otherwise purchased had Defendants not misrepresented material facts related to the transaction.

**FIRST AMENDED COMPLAINT**

51.    The Arcis Defendants further contributed to the unlawful scheme by refusing to refund Plaintiff's Membership Fee upon resignation of his membership, as had been advertised and agreed.

52.    Upon information and belief, the Arcis Defendants are liable for their own acts and omissions as well as the acts and omissions of Defendant CLP as its successors in interest in ownership and operation of the Club.

53.    Plaintiff did not become aware of the unlawful scheme until Plaintiff attempted to resign his membership and obtain the promised refund of his Membership Fee, on or about June 2022.

54.    Plaintiff sent the Club written notice demanding that the Defendants remedy the violations listed above and provide Plaintiff with a full refund of his $70,000 membership fee, as represented to him when purchasing the membership.  As of the filing of this Complaint, Defendants have neither made nor offered to make any proper correction of the conduct complained of.

55.    Plaintiff sent the Club written notice, by certified mail, return receipt requested (Attached as Exhibit A), notifying Defendants of the violations and demanding that they remedy the violations listed above within 30 days from their receipt of the letter.  The notice was sent to the Arcis Defendants at the address then listed as their principal address with the California Secretary of State.  The letter was returned as undeliverable to that address.

56.     Plaintiff thereafter sent a copy of the letter via FedEx to the Arcis Defendants at the address listed with the Secretary of State and sent an additional copy to the Club Manager at the Club's California address.  Proof of Delivery of the letter is attached hereto as Exhibit B.

57.     At the time of filing this complaint, more than thirty days has passed since receipt of Plaintiff's letter and demand, and Defendants have declined to make any proper correction of the conduct complained of.

58.     Plaintiff is a senior citizen as defined in Civil Code sections 1780 and 1761.

59.     Plaintiff has suffered substantial physical, emotional, or economic damage resulting from the Defendants' conduct.

60.     Defendants knew or should have known that their conduct was directed to one or more senior citizens, disabled persons, or veterans.

61.     Defendants' conduct caused Plaintiff, a senior citizen, to suffer loss or encumbrance of a primary source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; and/or or substantial loss of assets essential to his health or welfare.

62.     Plaintiff seeks damages, including, but not limited to:

a.  Damages in the amount of $70,000 for the Membership Fee paid to Defendant CLP and now held by the Arcis Defendants;

b.  Damages in the amount of not less than $10,000 for Club dues charged to Plaintiff after Plaintiff provided notice of resignation of his membership;

c.  Plaintiff's attorney's fees in an amount not less than $25,000;

d.  Punitive damages in the amount of $1,000,000;

e.  Statutory damages in the amount of $5,000 pursuant to Cal. Civil Code § 1780(b)(1);

f.  Treble damages under Cal. Civil Code § 3345;

g.  In all other amounts according to proof.

## CLAIM THREE: FRAUD
### (Against all Defendants)

63.   Plaintiff incorporates by reference each and every paragraph above as though fully set forth herein.

64.   Defendant CLP made false representations to Plaintiff of material facts or made material omissions of necessary facts with regard to the ease and flexibility of resigning his membership and obtaining a refund of his Membership Fee.

65.     Prior to Plaintiff's purchase of his membership, Defendant CLP, through statements by Mr. Williams and/or other representatives, represented to Plaintiff that resignation and the related transfer of a membership to an applicant wishing to purchase a membership and the return of the Membership Fee to Plaintiff, was a simple process taking a matter of months, if not immediate.

66.     Defendant CLP, by and through its agents, fraudulently advised Plaintiff that once the Club reached a total of 435 members, there would be no wait time, and refund of the Membership Fee would be made immediately upon resignation.

67.     Defendants CLP's representations were knowingly false.  When Plaintiff advised the Arcis Defendants that he wanted to terminate his membership and obtain a refund of his Membership Fee, the Arcis Defendants advised that he would have to be placed indefinitely on a long waitlist with no indication of how long redemption may take.

68.     Defendant CLP made these false representations to Plaintiff with the intent that he rely on those statements in making his decision to purchase a refundable $70,000 membership from the Club.

69.     Plaintiff relied, to his detriment, on Defendant CLP's statements suggesting the ease and simplicity of membership transfer.  In fact, the ability

**FIRST AMENDED COMPLAINT**

to transfer the membership with a great degree of ease was the most important factor in Plaintiff's valuing the purchase of his Club membership and was a major point of emphasis in Plaintiff's discussions with Defendant CLP's agents/employees prior to purchasing the membership.

70.     The representations made by Defendant CLP and/or its agents or representatives were false, in that the truth is, and was, far different from representations made.

71.     Upon information and belief, when the Arcis Defendants purchased the Club from Defendant CLP, the Arcis Defendants knew that material misrepresentations had been made to Plaintiff regarding the ease of obtaining a refund of the $70,000 "refundable" Membership Fee, and intended that Plaintiff would continue his membership under the same false promises made by its predecessors in interest.

72.     Upon notifying the Arcis Defendants that he wished to resign his membership in the Club and obtain a refund of his Membership Fee, Plaintiff was advised that he would need to continue paying membership dues for one year before being placed on a waitlist for members requesting refunds of their Membership Fees, and would need to continue paying administrative fees for 36 months thereafter.  Alternatively, he was advised that he could forfeit his Membership Fee refund and not pay any further membership dues.

**FIRST AMENDED COMPLAINT**

73.     Upon information and belief, when the Arcis Defendants refused to redeem Plaintiff's membership and refund his Membership Fee, the Arcis Defendants knew that material misrepresentations had been made to Plaintiff regarding his "refundable" Membership Fee.

74.     When Defendant CLP made the false representations that the Membership Fee would be fully and easily refundable, it knew them to be false, or had no reasonable grounds for believing those representations to be true.

75.     Defendant CLP concealed or suppressed material facts with regard to the ability to resign and obtain a refund of the Membership Fee, the Arcis Defendants continued to conceal or suppress those material facts, and Defendants, and all of them, were bound to disclose those material facts.

76.     Defendant CLP failed to disclose and concealed from Plaintiff prior to and at the time of Plaintiff's purchase of his membership, that a refund of his Membership Fee would essentially be impossible if the Club elected, in accord with its bylaws, to commence sale and flood the market with an alternative cheaper form of membership to prospective members.   Mr. Williams intentionally suppressed disclosure of the Club bylaws to Plaintiff when soliciting Plaintiff to join the Club and presenting Plaintiff with a form application for membership.  When Plaintiff became aware of the existence of

Club bylaws referred to in the form membership application and requested to see a copy, Mr. Williams advised Plaintiff that the bylaws would be presented only after Plaintiff's application was submitted and approved, and after Plaintiff paid his $70,000 Membership Fee.

77.     Plaintiff had no reason to know that the bylaws would state terms different than those expressed by Defendant CLP and Mr. Williams when soliciting his membership application and fees, and had no reason to review the bylaws for inconsistencies with what he was told until after the Arcis Defendants refused to refund his membership upon his resignation from the Club.

78.     Instead of disclosing them, Defendants concealed or suppressed those facts with the intent to defraud and induce Plaintiff to act - specifically to purchase a Club membership with a $70,000 Membership Fee.

79.     On information and belief, Defendant CLP knew that at the time Plaintiff purchased his membership, there already were several members on a redemption waitlist who were waiting years for their turn to receive a refund.

80.     Defendant CLP had a duty, separate and apart from its contractual duties to Plaintiff, to disclose the true facts with regard to resignation from the Club, but instead offered information likely to mislead Plaintiff, and failed to communicate the true facts to Plaintiff.

**FIRST AMENDED COMPLAINT**

81.     Defendant CLP made a promise to Plaintiff that he would receive a refund of his Membership Fee with no intention of performing that promise. Defendant CLP's promise without any intention of performance was made with the intent to defraud and to induce Plaintiff to rely upon that information, and to induce Plaintiff to pay a $70,000 Membership Fee to join the Club.  In justifiable reliance upon Defendant CLP's statements, Plaintiff was induced to act by paying that Membership Fee which he understood was easily refundable upon resignation from the Club.  As a result of Plaintiff's reliance upon the false information, Plaintiff has been damaged by paying a $70,000 Membership Fee that he otherwise would not have purchased, having his Membership Fee refund withheld, along with consequential damages resulting from the Arcis Defendants' retention of his Membership Fee.

82.     At the time of his payment of the Membership Fee, Plaintiff was unaware of the facts concealed and suppressed by Defendants and was not made aware of the true facts until Plaintiff attempted to resign his membership and obtain the promised refund of his Membership Fee, on or about June 2022. Plaintiff would not have joined the Club and paid the $70,000 Membership Fee had he known the true nature of the requirements for resignation and redemption.

83.     Plaintiff seeks to recover damages, including, but not limited to:

a.  Damages in the amount of $70,000 for the Membership Fee

Plaintiff paid to Defendants;

b.  Damages in the amount of not less than $10,000 for Club

dues charged to Plaintiff after Plaintiff provided notice of

resignation of his membership;

c.  Punitive damages in the amount of $1,000,000;

d.  Treble damages under Cal. Civil Code § 3345; and

e.  In all other amounts according to proof.

**CLAIM FOUR:**
**NEGLIGENT MISREPRESENTATION**
**(Against all Defendants)**

84.    Plaintiff incorporates by reference paragraphs 1-85 above as though fully set forth herein.

85.    Defendant CLP negligently made false representations to Plaintiff of material facts with regard to the ease and flexibility of resigning his membership and obtaining a refund of his Membership Fee.

86.    Defendant CLP, by and through its agents, falsely advised Plaintiff that upon resignation of his membership, he would receive a refund of his Membership Fee once two direct treasury memberships were sold.  Defendant CLP falsely advised that this was the only type of membership available at the Club.

87.    Defendant CLP, by and through its agents, further advised Plaintiff that once the Club reached a total of 435 members, there would be no wait time, and refund of the Membership Fee would be made immediately upon resignation.

88.    Instead, Plaintiff was advised by the Arcis Defendants upon his request to terminate his membership and obtain a refund of his Membership Fee, that he would have to be placed indefinitely on a long waitlist with no indication of how long redemption may take.

89.    Defendant CLP made false representations to Plaintiff with the intent that he rely on those statements in making his decision to purchase a refundable $70,000 membership from the Club.

90.    Plaintiff relied, to his detriment, on Defendant CLP's statements suggesting the ease and simplicity of membership transfer.  In fact, the ability to resign and refund the membership with a great degree of ease was the most important factor in Plaintiff's valuing the purchase of his Club membership and was a major point of emphasis in Plaintiff's discussions with Defendant CLP's agents/employees prior to purchasing the membership.

91.    The representations made by Defendant CLP and/or its agents or representatives were false, in that the truth is, and was, far different from representations made.

**FIRST AMENDED COMPLAINT**

92.     When Defendant CLP made the false representations, it had no reasonable grounds for believing those representations to be true.

93.     Defendant CLP had a duty, separate and apart from its contractual duties to Plaintiff, to disclose the true facts with regard to resignation from the Club, but instead offered information likely to mislead Plaintiff.

94.     Plaintiff was harmed by Defendant CLP's misrepresentations in that he purchased a Club membership, paying Defendant CLP a $70,000 Membership Fee which he believed based on Defendant CLP's representations was fully refundable upon resignation, having his Membership Fee refund withheld, along with consequential damages resulting from the Arcis Defendants' retention of his Membership Fee.  Instead, upon notifying the Arcis Defendants, Defendant CLP's successors in interest, of his resignation, he was informed that he would have to be placed on an indefinite refund waitlist while continuing to pay full active dues for one year, plus maintenance fees for an additional 36 months.

95.     Plaintiff had no reason to know that the representations made by Defendants were false and had no reason to review the bylaws for inconsistencies with what he was told until after the Arcis Defendants refused to redeem his membership upon his resignation from the Club.

96.     Plaintiff seeks to recover damages, including, but not limited to:

**FIRST AMENDED COMPLAINT**

a. Damages in the amount of $70,000 for the Membership Fee Plaintiff paid to Defendants;

b. Damages in the amount of not less than $10,000 for Club dues charged to Plaintiff after Plaintiff provided notice of resignation of his membership;

c. Punitive damages in the amount of $1,000,000;

d. Treble damages under Cal. Civil Code § 3345; and

e. In all other amounts according to proof.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff David J. DiMaria, demands a jury trial on all the issues so triable.

/ /

/ /

/ /

/ /

**26**

**FIRST AMENDED COMPLAINT**

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants as follows:

1. Damages according to proof, including return of Plaintiff's $70,000 Membership Fee plus not less than $10,000 in membership dues charged after Plaintiff gave notice of resignation of his membership;

2. Statutory damages according to proof;

3. Punitive damages according to proof;

4. Treble damages to the extent allowed under Cal. Civil Code § 3345;

5. Prejudgment interest as allowed by law;

6. Plaintiff's attorney's fees and the costs of suit incurred herein; and

7. Such other and further relief as this Court may deem just and proper.

DATED: August 28, 2023          MCBREEN & SENIOR

By:   /s/ Ann K. Tria
ANN K. TRIA
DAVID A. SENIOR
Attorneys for Plaintiff
DAVID J. DIMARIA

**FIRST AMENDED COMPLAINT**